Ruffin, 0. J„
I concur in the opinion, that the judgment should be affirmed. I think a pledge of stock in a corporation, or in the public funds, or of securities for a. debt, whether by parol or in writing, is not within the act, which requires deed of trust or mortgages of estates to- be registered, in order to give them validity. It is, neither in form or substance, within the language of the act, nor within the mischief which it sought to suppress. *323 Had it pleased my brethren to allow the cause to be decided on this point — and it is the only one which is necessary to its decision — the judgment might, as far as I am concerned, have been entered, immediately after the argument at the last term. But they have thought it proper not to confine their opinion to the facts of this case, and hold that a pledge of stock is not within the act, but place their judgment upon broader ground, that all pledges, whether of stock, choses in action, or specific articles, are without the act. In that part of their opinion I did not agree ; and, with a view to a fuller consideration of the question, the case was left under advisement. But we have come no nearer together than at first, and it now becomes, my duty to give the reasons for my opinion.
The act of 1829, c. 20, is entitled “an act to prevent fraud in deeds of trust and mortgages;” and it enacts, “ that no deed of trust or mortgage, for real' or personal estate, shall be valid to pass any property as against creditors or purchasers from the donor or mortgagor, but from the registration of such deed of trust or mortgage, in the County where the land lieth, or, in case of chattels, where the mortgagor resides or,the chattels are situate.” My brethren say, that a pledge or power is not mentioned in the act, but only deeds of trust or mortgages, and that there are certain known differences between a pledge and a mortgage of chattels; and therefore, the Legislature may have designedly left out pledges, and, at all events, that the Court cannot construe the act as if they were in it. It is plain, that the argument is merely, verbal, turn ing upon the particular term “ mortgage” and having na regard to the mischief within the purview of the act, nor the means intended t o suppress it. But that is not the principle of the construction of remedial statutes, or those to prevent fraud. To stick to. their letter is sticking in the shell and losing the kernell.
They are to be liberally construed, in order to defeat fraud, prevent artful shifts and evasions, and protect fair *324 dealers, and advance their remedies. I need not quote authority for that position. It is a maxim in the law, and my is to mind decisive of this question. I do not dispute the distinction between pledges and mortgages, which are mentioned ; though, in modern times, Courts of Equity have not hesitated to give .relief on pledges, as if they were pure mortgages, upon the ground, that they were but securities for debt and that the rights of the parties may involve an account. Certainly, in this State, in the instance of the most valuable of our chattels, namely, slaves, bills for redemption or foreclosure have been constantly entertained, as well when the slave wan pledged, by being put in the possession of the lender of the money without a written conveyance, as when there was in terms a mortgage proper by deed. But, let it be admitted that all those distinctions do fully subsist at the present day, still they are differences in no degree material to the purpose which we are now considering, namely, the reason why the Legislature requires mortgages to be registered, and to what conveyances or contracts those reasons extend. The object of the law was to prevent fraud, and to that end to require all encumbrances upon tangible estates to be registered) that purchasers and creditors might have notice of their existence, nature and extent. It mentions “ deeds of trust” and “ mortgages,” but it is not satisfied by applying it only to conveyances, which are, technically and in form, deeds of trust or mortgages. The intention of the Legislature can be fulfilled, only by including within the scope of the Act, all other conveyances, which the parties intended to have the same effect as if they were “ deeds of trust” or “ mortgages” upon their face ; in other words, were meant to be securities for moneij, and between the parties are but securities. If the construction is to be narrowed down, so as to make it turn on the word “mortgages,” and not include “a pledge,” because a pledge is not a mortgage ; wrhy, for the same reason. *325 an absolute deed, with a separate parol agreement for a reconveyance or redemption is not within the Act, since that is not upon its face a “ mortgage,” but is only held by a Court of Equity to be a security in the nature of a mortgage. Accordingly, in the first case that arose under the encumbrance registry acts, that of Gregory v. Perkins, 4 Dev. 50, it was held, that the necessary construction of the act of 1820, by whi ch instruments, which in themselves are deeds of trust or mortgages, were required to be registered- within six months, was to avoid deeds which Avere intended to be securities, but do not profess upon their face to be so. The Court said, “ it is not surprising, that, with the experience of the evils of secret liens and pretended encumbrances, the Legislature should require, when the contract, in its terms, creates an encumbrance, that notice should be given of it, that other persons may know how to deal with the former owner. For the like reason, and as a necessary consequence, when nothing but an encumbrance Avas meant, the parties must frame the evidence of their contract accordingly. In the former casé, (that is, where there is a mortgage in form,) the encumbrance is lost, because the owner will not register it. . In the latter, (that is, when upon its face the deed is absolute,) because by his folly he cannot register it.” And the Court then added, that a case was brought within the Act by the reservation of any thing to the former owner, which, if inserted in a deed, would give him a valuable interest in the property — whether that interest was legal or equitable. It is very plain, that it must in-reason be so. There are two kinds of fraud practised by means of these incumbrances. One is, where the former owner remains in possession, using and enjoying the estate after he has conveyed it as a security to another, and thereby gains a false credit. Then the law requires that the conveyance should speak the truth in itself, as to its nature, and also that it should be registered, in order that the world may see for what the encumbrance *326 is created. Another is, where the possession passes, to the incumbrancer, but still leaving an interest in the former owner. Then, also, the law requires that the conveyance should speak the truth, and be registered for the purposes of publicity, in order that the creditors of the former owner may not be baffled by his apparent departing with the property, but take their remedies, legal or equitable, directly against the debtor’s remaining interest, whatever it may be. For that reason, in Halcombe v. Ray, l Ired. 340, it was held, that an absolute deed, intended at the time as a mortgage, was void under the Act of 1820 and 1829; because, if they were not thus held, it would make those acts a dead letter, as parties would have nothing more to do, but leave out the condition or proviso for redemption, and the whole policy of the Legislature would fall to the ground. The language of the case is, “ If the deed had truly expressed the contract of the parties, the mortgagor’s creditors would have a plain logoi remedy under the Act of 1812, against his equity of redemption in land, and in equity against that in chattels ; and the Legislature, by the Acts under consideration, intended to provide for those creditors such means of knowledge as would enable them to avail themselves promptly and chea]5ly of those remedies. Our duty is, to receive and administer the statutes in a sense which will secure to the creditor the whole benefit intended for him ; and we are obliged to hold the deed void, because, if allowed to stand, the creditor would be in the same condition as if such laws (the registry acts) had never passed.” It is thus seen, that this Court thought the meaning of the Act was not to be found out by tying our attention down to the words “ deeds of trust or mortgages”; but that those words were used as examples or instances of incumbrances, and that the true sense of the Act extends to every transaction that was intended between the parties to be an encumbrance. That is declared, in so many words, in Newsom v. Roles,, *327 1 Ired. 179. The Court say “ the case of Gregory v. Perkins has in view those conveyances, which, whatever he their form, are intended by the parties as securities; upon which, if the instrument had set forth the true and whole agreement, the property, in the view of the Court of Equity, is deemed to be in the apparent vendor, though liable, as a security, for a sum of money due to the apparent vendee.” In other words, that case treats of transactions “that appear to the world to be sales, but are, as between the parties, secretly mortgages, or in the nature of mortgages.” All these positions were laid down as the opinions of the Court, and not of the single Judge who spoke for the Court; and I believe they were fully entertained by all the members of the Court, at the time. To shew how completely the doctrine was settled in my own mind, as the doctrine of the Court, I will take the liberty of referring to what I said of it in Womble v. Battle, 3 Ired. Eq. 186, in using it in illustration of the positions I there took. It was, “ that, as the object of the Acts of 1820 and 1829 is to suppress fraud-by compelling persons to register incumbrances, the necessary construction of them is, that every incumbrance, not in writing, and so not capable .of registration, is within the mischief of the Act, aud made void by it.” I am aware that these registry acts have not been favorites of my brother Daniel, because they treat acts and avoid them as-fraudulent, -when there may not be an actual or intended fraud; and in the case of Womble v. Battle, he refused to allow any weight to the argument drawn from them against the vendor’s, or other secret, equitable liens. But the act of 1829 is not directed against frauds actually perpetrated, as the St. 13 Eliz. is, but regards acts which tend to fraud. As it says, it really means “ to prevent fraud in deeds of trust and mortgages,” by making them void in the same manner as they would be by the statute of 1715, if they were actually fraudulent. That policy of the law a Judge ought to further and not defeat by any *328 opposite motion of his own. For my own part,-however, I deem it a most wise policy to cause incumbrances to be published. And in the case last mentioned, Judge Nash seems to have the same views of it. He says, “ there can be no doubt of the policy of the Legislature in the enactment of this statute, of 1829. It was to put an end to the many frauds which mighthe. practiced on creditors and purchasers by. secret deeds of trust and mortgages, by furnishing a convenient and sure mode, in which might be discovered all incumbrances under which an individual held his property.” Now, I would ask, is not a pledge of a negTO an incumbrance 1 If not a mortgage, is it not a security for debt, and at all events, a securitj^ in the nature of a mortgage 1 Is it not, then, within the mischief of the act, and therefore to be remedied by so construing the act, as to prevent its being evaded by means of the use of a pledge in the place of a mortgage, as contra-distinguished from it by an actual conveyance of the chattels - — -I think the cases I have cited, if they are to be allowed any authority as adjudications of this Court, decisively answer those questions; and that they are as much forbid a resort to pledges to escape the necessity of giving notice of them by registration, as they do a resort for that purpose to-conveyances absolute upon their face. Neither is ‘ a mortgage,” in terms not appearing upon its face to be so. But the same reason, which induced the Legislature to forbid the taking of absolute deeds, when a security in nature of a mortgage is intended, likewise forbids the taking “ a pledge” instead of a mortgage, if by taking the pledge, the transaction is to be by a parol or unregistered agreement so as to be kept secret. I cannot but express exceeding regret at the thought, that those cases should be over-ruled, both because it tends to subvert all certainty in the law, and also to obstruct a most wise" policy of the Legislature. Independent, however, of the-authority of those cases and the reasoning on which, as declared in them, the resolutions were adopted, they are *329 fully sustained by adjudications upon other statutes, in their nature remedial, or for the suppression of fraud. Take for example what Lord Coke says in Irvin’s case, 3 Rep. 82. that, if, contrary to St. 27 Eliz. avoiding, as to purchasers, a previous conveyance with a power in the grantor to revoke it, a man make a deed and reserve to himself a power to revoke it with the assent of another, it is within the statute, “ for otherwise the good provision of the act by a small addition — an evil invention — would be defeated.” So, it is a rule of law, that an appointment is not a conveyance, and the estate of the appointee takes effect, as if it had been created in the instrument, which created the power. Yet Lord Hardwicks, notwithstanding the verbal criticism, held that the execution of a power is a conveyance within the meaning of the St. 13 Eliz. c. 5, in favor of creditors, although the act uses the terms, 41 feoffment, gift, grant, alienation, bargain, and conveyance,” ousting “ appointment,” or any word equivalent to it in its restricted sense of being the execution of a power. Marlborough v. Godolphin, 2 Ves. 60. The case of Scrafton v. Quincy, 2 Ves. 413. is Still more appropriate, because it was a decision upon a registry act. A deed of appointment was made for land lying in a Register County, in pursuance of a power created in a deed not registered, and the appointee was postponed to a mortgage, subsequently made but registered first. It was contended the Act did not apply, because those deeds did not convey land, but only created a power to appoint, and the appointment. But what said the Chancellor ? “ Consider the intent and meaning of the act. The case is clearly within the mischief. It is said this deed is not to be considered as a separate conveyance, but only the execution of a power. If that construction was to prevail, there would be an end of the registry and of the act of parliament, for by these means secret deeds” (not conveying the land, but creating and executing powers over it,) “ might be set up to defeat him who had regis *330 tered. Bring a conveyance actually affecting the land, though in virtue of a preceding power in another deed, this is, within the intent of the statute and common understanding, such an incumbrqnce as ought to be registered.” One would think that those cases and observations were sufficient to prove the proper construction of our statute, and that a pledge of specific chattels is within the provisions* .just as much as a mortgage proper. But I will add some others, that I may omit nothing that may serve to elucidate the point, and give full efficiency to this valuable statute, if executed in the spirit in which it was' passed. In Saunders v. Ferrell, 1 Ired. 97, there was an ante-nuptial marriage contract, and the husband fraudulently reduced it to writing, so as to omit a material provision in favor of the wife ; but after the marriage,, a settlement was executed according to the original and true agreement. Yet the Court held, that evidence of the contract, as far as it differed from the written agreement, could not be received in support of the settlement, notwithstanding the fraud on the wife, because it was in parol; for it was deemed “ a self-evident proposition, that those agreements must be in writing, as in that form alone do they admit of registration” — which ceremony the law requires, as respects marriage contracts. If; might have been said, then, that the Legislature knew that people sometimes made verbal marriage contracts, and therefore, that in requiring marriage contracts to bo registered, written ones alone were meant. But the answer was, that secret incumbrances, in the form of marriage contracts, were the evils in view, and in order to prevent them the law required the registration of all marriage contracts, and, in so doing, required them by implication to be in writing, and made them- void if they were not. The same reason applies here! Again: in Thorpe v. Ricks, 1 Dev. and Bat. Eq. 613, a man contracted for the purchase of land, and, in order to pay for it, borrowed the money, and secured it by having- the- *331 land conveyed by his vendor to the lender of the money, taking from the latter a written acknowledgment, that the land was but a security. The Act of 1812 enacts that “ the equity of redemption in lands pledged or mortgaged,” shall be liable to execution; and it was contended, that the purchaser’s interest was not subject to execution, because there was no mortgage,” and of course he had no “ equity of redemption,” as the deed was not a formal mortgage,with an express provision for defeazance. But notwithstanding the policy of selling such interests under execution, instead of a decree of a Court of Equity, did not accord with our views, (as it never did, I believe, with those of any lawyer who gave the subject even a little thought,) the Court held, that we were bound to advance the policy approved by the Legislature, and therefore, that an equity of redemption, raised by construction of the Court of Equity, was subject to execution, as well as those expressly made so by the terms of a mortgage. This was so held, because “ it is obvious,” said Judge Gaston, “ that the great purpose of the enactment was to furnish an easy and expeditious remedy to creditors, against debtors who held redeemable interests, actually of value; and it is equally obvious, that if we adopt the narrow construction contended for, every debt- or, by a slight change oí form, may secure to himself such valuable interests, and place them beyond the operation of the statute. Therefore, we feel bound to hold, that whatever a Court of Equity holds to be an equity of redemption in land is, by force of the express legislation, liable to sale under execution.” It was also held, in Harrison v. Battle, 1 Dev. Eq. 537, that when one makes a deed of land, in trust to sell to- pay debts, the resulting trust, though it cannot be sold, as a trust, under the first section of the Act of 1812, may be sold as an equity of redemption, within the second section. Why ? there is no “ mortgage”; and that is the stronger because-the Act in two sections distinguishes between “ trusts” *332 and “ equities of redemption.” But the trusts there spoken of are of- a different kind from that resulting to a debtor, on his conveyance upon a trust for payment of debts, and therefore the differences between those trusts and equities of redemption did not forbid the bringing of other trusts within the second section of the Act, that were within the reason of it. Therefore, Judge Henderson said, “ we cannot distinguish his, the debtor’s, right to have the lands again after the payment of the debt, for which it stood as a security, from an equity of redemption. It has all the essentials of that right, although it wants some of the formal parts. Its exemption from sale under a fieri facias is equally an evil, with the exemption of equities of redemption. The mischief is precisely the same, and we therefore think it within the spirit of the section of the Act.” This doctrine came under review in Pool v. Glover, 2 Ired. 129, and the Court admitted that there were forcible objections to selling resulting trusts, under legal executions, but said “ that cannot justify the Court in striving against the policy of the Legislature, by putting such construction on the statute, as will virtually repeal it, by enabling persons to evade it by the simplest contrivance. The question is, what is a mortgage, and what an equity of redemption within the sense of the Act ? Is a deed of trust of that character ? Not a reason can be given against selling such a resulting trust, which would not equally condemn the sale of a proper equity of redemption — one arising on “ a mortgage” in the most appropriate sense of that term. When, therefore, such sale (of a resulting trust) is argued against, the fault is found with the policy of the act, and not with its construction. The construction is unavoidable. The purpose of the act is to aid creditors by a sale of a valuable interest of the debtor under execution. It is remedial and to be construed so as to suppress the previous mischief and advance the remedy. Therefore, the Court could not allow the execution to be baulked by the libe *333 ral impediment, that the debtor had not “ an equity of redemption,” because he had not conveyed his land to his creditor, with a power to redeem it, but had conveyed it to a third person, with power to call for a reconveyance, upon payment of the same debt before a sale. Such an interpretation would be paltering with the sense of the Legislature. In substance, the debtor has the same interest in both cases ; and therefore it must be liable in both instances alike.” So it seems to me here, that a debtor who gives a mortgage on his slave or horse, and he who pledges them, has in substance the same interest in value and reality, though not in form. In each case he is the owner of the property ; in the one case, he is so at law: in the other, indeed, he is not at law, but he is in equity ; and that, for the very reason that equity has respect to the substance without regard to the form: And in each case the property is liable, as a security, to pay a debt to another person. Is not this, then, precisely the case, in which the Legislature intended, that an encumbrance, in whatever form, as was said in Newsom v. Roles, should be put into writing and registered, in order that the debtor should not, on the one hand, have a false credit, nor, on the other, have an interest of value concealed from his creditors ? What matters it to the creditors of the owner of the property; or how can it affect the policy which called forth these statutes, that, as between the parties themselves, there may be some slight difference between mortgages and pledges, in respect of the remedies on them 1 It is of no consequence whatever. In either case the creditors can have their remedy against the property, either as the legal or equitable property of the mortgagor or pawner for their satisfaction, if they can ascertain his interest; and therefore, the Courts ought so to construe the act, as to afford the creditor all the light as to the debtor’s interest which he would get under the act, if the debtor had given the security in one of those usual forms, which are mentioned *334 in the act, namely a deed of trust or mortgage. Is it possible, that all the anxious legislation “ to prevent frauds” by incumbrances, is to be rendered nugatory “ by a slight change of form” as was mentioned by Judge Gaston in Thorpe v. Ricks, by calling the incumbrance a pledge instead of a mortgage ? If that be so, who does , not see, that debtors will seldom convey chattels by way of open and formal mortgage, hereafter, but .will proceed by verbal pledge ; especially in those hardest and most oppressive cases, in which the money is advanced upon an agreement for usurious interest. It is to be feared that it would let in a flood oí fraud. It seems to me, therefore, that, if this were a pledge of a specific chattel, it would be void under the act of 1829, as being clearly within the mischief; and that-this is the plain result of the numerous cases on the act, besides those upon other acts of the like kind. This brings me next to state more particularly the reasons, why the present case is not within the act — as I think it is not, either in respect of the words of the act, or the mischief. In the first place, the subjects of the conveyances mentioned in the act, are “ estates” real or personal, which term in itself denotes something corporeal. But the act is yet moré precise upon this point, when it comes to designate the place for the registration of the deed of trust or mortgage, by saying that it shall be in the County where <e the land lieth,” or, in case of chattels, the County where “ the said chattels are situate.” It is evident, therefore, that the Legislature contemplates a mortgage of chattels as well as of land. Incumbrances upon such property are usually called, and “ in common understanding” are mortga* ges or deeds of trust. But we do not call an assignment of a bond or a transfer of stock, or a power to transfer, as securities for debt, nor usually consider them to be, mortgages or deeds of trust. But I own these reasons would not satisfy my mind, if they stood alone. For, if the bond or the stock; if unencumbered, or if the debtor’s interest in it, sub- *335 jectto the incumbrance, could be rendered liable to the satisfaction of a judgment, either upon execution, or by decree of the Court of Equity, I should deem the case within the reason of the act, and therefore subject to its operation. But debts, stock and choses in action generally, are not applicable to the owner’s debts in either of the ways I have mentioned, nor in any way during the life of the owner, except by his own transfer of them, or a legal assignment of them in the cases of bankruptcy or insolvency. . They are not goods or chattels, and as such subject to a fieri or levari facias; and there is no instance, that I am aware of, except one, in England, in which the Court of Equity has laid hold of them for the satisfaction of judgments — for they are not equitable property, but are legal rights. In the administration of a dead man’s estate, the Court of Equity controls interests of this kind, as part of the fund which the executor is accountable for as trustee ; and when t]jsJLa«r undertakes to discharge a debtor from his debts, by taking-his property for the benefit of his creditors, it provides for an assignment of these as of other interests. Being in their nature legal rights, equity leaves it to the law to dispose of them; and no method has as yet been provided for that purpose, but that of taking execution against the body, and thereby inducing the owner to pass them by his contract in satisfaction of the particular debt, or to surrender them as a bankrupt or insolvent for the ben-fit of all his creditors. The Court of Equity deems that an adequate remedy, and therefore sees no necessity for coming in aid of the law. The exception to which I allude, is that established in Edgell and Hayward v. Davie, 3 Atk. 352; and that proceeds upon the very special ground, that the person of the debtor, who had been discharged under the insolvent debtor’s act, was. protected against a ca. sa. by the act of parliament,, which, at the same time, made his- future effects liable for the debt. Even that case1 has been questioned by *336 very high authority — that of the Court of Exchequer, in Otley v. Lines, 7 Price 274. Though questioned, it was not over-ruled, and it seems to me to be good law; and this Court acted on it in Brown v. Long, 2 Dev. and Bat. Eq. 138 ; because, in those cases, the law intended the debtor's effects to be answerable for the debt, and there was no possible remedy at law, as the body was protected, and the only property he had was not tangible. That view is entitled to the more respect, because it is taken by Lord Redesdale, who states that as a proper case for the Court of Chancery to exercise its extraordinary jurisdiction of enforcing a judgment against the debtor’s legal effects, Mil. Plead. 115. Except that case of “ vei-y particular circumstances,” as Chief Baron Richards called it, I have met with no other in England, in which the creditor succeeded in getting the Court of Chancery to interpose. In Dundas v. Dutens, l Ves. Jr. 196, Lord Tuurlow asked if there, was any case, where a man having stock in his own name, had been sued for the purpose of having it applied to satisfy creditors'? He said, “ those things, such as stock, debts, &c. being choses in action, are not liable. They could not be' taken on a levari facias. It is quite new to me, that this Court can touch it. I have not heard of such a thing.” Lord Eldon, in Nantes v. Corrock, 9 Ves. 189, held, that equity could not attach stock or choses in action, on which there was no lien for the payment of debts. And in Rider v. Kidder, 10 Ves. 360, he repeated, that “it is clear, stock cannot ,be attached in the life of the party.” He added, “ such was the language of Lord Thurlow in Dundas v. Dutens, and also in the case of Sir Alexander Leith, when a bill was filed, to try whether this Court would give execution in aid of the infirmities of the law, and it. was held, there was no jurisdiction.” In the case of Caillaud v. Estvick, 2 Anstr. 381, upon Dundas v. Dutens, l Ves. Jr. 196, being referred to, Chief Baron MacDonald said, that he remembered applying- on behalf of the Crown, to *337 have the assistance of equity in aid of an extent, to get at stock iff the funds, and it was rejected. Finally, the case of Otley v. Lines, already mentioned, occurred in 1819, and was decided on demurrer, and seems to have settled it to be the law of England, that debts or any choses in action cannot be applied by the Court of Equity to the payment of debts. In some of the States of this Country, I am aware that it has been provided by statutes, and in others judicially decided, that they may. But there has been no decision to that effect in our Courts, nor interposition as yet, of the Legislature ; and I cannot make the precedent.
Being brought to this conclusion, it follows, that, if there had been here the most formal assignment of the stock executed and registered, it would have availed the creditor nothing. Consequently he could suffer no prejudice by the omission to make or register such an instrument ; and the case is not within the acts requiring registry of incumbrances, as the means of preventing fraud. It has also material weight with me, that the Banks in this State and almost in all others, have been in the habit of taking pledges of their own and other stocks, as securities for loans, and they have never thought of registering them — at least not in this State. And we know that our Banks have been generally under the management of able lawyers and other activo and thorough men of business.
On taking assignments of bonds and other negotiable instruments, as securities, 1 believe too the universal course has been to take them by indorsement and delivery of the instrument, and not by deed of trust or other instrument to be registered. When debts due on accounts, or other choses not assignable at law, are taken as securities, deeds are taken generally it is true; but that would be the case, as evidence of the assignments and the usual mode of making them before the registry act. I believe that, when taken, they are commonly registered : for they *338 generally include other things, as land or specific chattels, which render it necessary; and if they did not, they would probably.be registered from habit. But the universal course with respect to negotiable securities, is to transfer them to the creditor or one for him, by endorsement* which is never registered; and that shews the sense in which the Act has been received by the profession and the people generally, from the time of its passage. Upon this ground, therefore, that this is not merely a pledge* but that it is a pledge of stock, I think the judgment should be affirmed.
Per Cumam. Judgment affirmed..